UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORETTA VAN BEEK,

    Plaintiff,

v.

                              Case No. 11-10514
                              Hon. Lawrence P. Zatkoff

CRYSTAL ROBINSON, TONI
FEENSTRA, and the UNITED
STATES OF AMERICA,

    Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 16, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Defendants' motion for partial summary judgment [dkt 36]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, the motion is DENIED.

**II.  BACKGROUND**

Plaintiff Loretta Van Beek resides in Ontario, Canada, and is a citizen of Canada.[1]  She

---

[1] Because the Court's review of this motion is governed by the standard for summary judgment set forth in Fed. R. Civ. P. 56, the Court must draw all reasonable inferences in favor of

owned a second house in the United States from 1999 to 2011. On March 2, 2010, she arrived at the Ambassador Bridge in Windsor, Ontario, Canada, at approximately two p.m., intending to cross into the United States and vacation at her second house in Savanna, Georgia. Approaching a booth in Detroit, Michigan (the United States side of the bridge), Plaintiff provided her passport and informed Defendant United States Customs and Border Protection ("CBP") Officer Crystal Robinson ("Defendant Robinson") of her reason for entering into the United States. Defendant Robinson questioned Plaintiff on the contents of her car. Plaintiff responded that she had her two cats, their carriers, and several items for her second house. Interrupting Plaintiff, Defendant Robinson further inquired about the items for the house and told Plaintiff to roll down the windows and unlock the doors of the car. Defendant Robinson proceeded to open the rear hatch of the car, visually inspecting its contents. Plaintiff was then told to drive her car to a secondary inspection area, remove her cats from the car, and enter the CBP building located near the inspection area.

Placing her cats in their carriers and leaving them outside of her car, Plaintiff entered the lobby of the CBP building. Plaintiff answered further questions from a CBP officer once inside. At some point, a male CBP officer informed Plaintiff that the contents of her car included fruit which she had not declared while attempting entry into the United States. The CBP officer told her it was illegal and provided her literature about transporting fruit across the United States' borders. After further questioning at a counter in the lobby by Defendant CBP Officer Toni Feenstra ("Defendant Feenstra"), Defendants Feenstra and Robinson took Plaintiff to a cell. The cell had a bench and a urinal. Defendant Robinson told Plaintiff she was not being locked in the cell. Plaintiff

---

Plaintiff. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Accordingly, the factual depiction of this case is based on Plaintiff's deposition testimony, drawing all reasonable inferences in favor of her.

was also told to place her possessions on the bench affixed to the wall in the cell. Defendant Robinson further instructed Plaintiff that she was being denied access to the United States because they believed she was illegally living in the United States. As a result of being denied entry, Plaintiff was told that she needed to be fingerprinted, which would require the officers to search her for their safety.

Prior to the search, Plaintiff was wearing a coat, a scarf, a zip-up sweater, a camisole, underwear, knit yoga pants, and leather walking boots. Plaintiff was not wearing a bra under her sweater and camisole. Plaintiff was asked by Defendants Robinson and Feenstra to remove everything but her pants and camisole. Plaintiff was then directed to face the wall, spread her arms and legs apart, and put her hands on the wall. Plaintiff believes that Defendant Feenstra stood behind Plaintiff to her left. Defendant Robinson then approached Plaintiff. With both hands, Defendant Robinson started the search of Plaintiff by twisting her nipples and then touching her breasts over Plaintiff's camisole—lasting approximately one minute. Startled, Plaintiff dropped her head. Defendant Robinson yelled at Plaintiff to face the wall. After fondling Plaintiff's breasts for approximately 30 seconds more, Defendant Robinson searched through Plaintiff's hair for approximately one minute.

Defendant Robinson continued to search Plaintiff's entire body. Pausing, Defendant Robinson told Plaintiff, "Now I'm going to get intimate." Using her thumb or the edge of her hand (Plaintiff is uncertain of which), Defendant Robinson did a "forceful sweep" of Plaintiff's groin area, which resulted in her underwear being pushed into her genitalia. This entire search took approximately ten minutes. Plaintiff was escorted back to the lobby. Defendant Feenstra took Plaintiff's fingerprints and her picture. Plaintiff was provided papers relating to her denial of entry,

and Defendant Feenstra escorted Plaintiff to her car. The detention took approximately three hours; Plaintiff returned to Canada around five p.m.

On February 9, 2011, Plaintiff submitted a Standard Form 95 Claim for Damage, Injury, or Death ("SF 95") with CBP. Plaintiff states on her SF 95 the following as the basis for her claim:

> Claimant was attempting to cross into U.S. at Detroit CBP post. Following extensive questioning, 2 CBP agents detained claimant in a holding cell and informed her entry into U.S. was denied. Agents then ordered claimant to strip and stand spread-eagled against cell wall so that she could [be] searched prior to fingerprinting allegedly required for the protection of the agents. While 1 agent observed, 2nd agent aggressively grabbed and twisted claimant's breasts and nipples, thrust hand inside claimant's genitalia, and moved bare hands over all other surfaces of claimant's body with no other search efforts made.

On July 21, 2011, CBP responded by letter to Plaintiff's SF 95, stating that CBP was aware of no evidence that any CBP officer acted inappropriately or caused injury to Plaintiff. The letter further advised Plaintiff that her claim for $500,000 was denied, but she had the right to file suit in a federal district court.

By the time Plaintiff received denial of her claim from CBP, Plaintiff already had filed this case against Defendants Robinson and Feenstra. The same day Plaintiff had submitted her SF 95 to CBP, Plaintiff filed her Complaint with the Court. After the denial of her SF 95, she amended her Complaint, adding claims against the United States under the Federal Tort Claims Act ("FTCA"). Plaintiff claims that Defendants Robinson and Feenstra violated her Fourth Amendment right against unreasonable search and seizure when they detained and searched her at the international border. Plaintiff also asserts three tort claims against the United States for battery, false imprisonment, and intentional infliction of emotional distress under the FTCA.

After the completion of discovery, Defendants filed the instant motion seeking partial

summary judgment. Defendants assert that Plaintiff's Fourth Amendment claim must fail because Defendants Robinson and Feenstra are entitled to qualified immunity. Defendants also assert that Plaintiff's false imprisonment claim must fail because her detention at the border was lawful, and she failed to present this claim to CBP in her SF 95 as required by the FTCA. Defendants concede that genuine disputes of fact exist with respect to Plaintiff's battery claim, intentional infliction of emotional distress claim, and the manner in which Defendant Robinson searched Plaintiff's breasts.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing

*Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV.  ANALYSIS

Analogous to a claim against state officers under 42 U.S.C § 1983, Plaintiff seeks damages against Defendants Robinson and Feenstra (federal officers) for violation of Plaintiff's Fourth Amendment rights under *Bivens v. Six Unkown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390–97 (1971).  Defendants argue that they are entitled to summary judgment on the basis of qualified immunity as to the claim against Defendants Robinson and Feenstra.

### A. CLAIM AGAINST DEFENDANTS ROBINSON AND FEENSTRA

Government officials such as federal officers are shielded from liability under the doctrine of qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pierson v. Ray*, 386 U.S. 547 (1967).  In order to determine whether a defendant is entitled to qualified immunity, the Court performs a two-step analysis.  The Court first must question whether the alleged facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Court then must decide "whether the right was clearly established."

*Id.* To conclude that a right is clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The burden is on the plaintiff to show that the defendant is not entitled to qualified immunity. *See Miller v. Admin. Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006).

### 1. Constitutional Violation

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures . . . ." The determination of what is a reasonable search is different at the nation's international borders as opposed to its interior. With respect to searches at the nation's borders, routine searches are presumed to be reasonable under the Fourth Amendment. *United States v. Ramsey*, 431 U.S. 606, 616 (1977) ("[S]earches made at the border . . . are reasonable simply by virtue of the fact that they occur at the border . . . ."). Routine searches do not require reasonable suspicion, probable cause, or a warrant. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985); *Ramsey*, 431 U.S. at 616–619. While the Supreme Court has been silent on what constitutes a routine search, various courts of appeals have determined that a standard patdown search is routine. *Bradley v. United States ("Bradley II")*, 299 F.3d 197, 203 (3rd Cir. 2002); *United States v. Beras*, 183 F.3d 22, 26 (1st Cir. 1999); *United States v. Gonzalez-Rincon*, 36 F.3d 859, 864 (9th Cir. 1994); *United States v. Carreon*, 872 F.2d 1436, 1442 (10th Cir. 1989). These routine standard patdown searches include a patdown of a person's body over that person's clothes, including the person's breast or crotch area. *Anderson v. Cornejo*, 199 F.R.D. 228, 257 (N.D. Ill. 2000).

Contrary to routine searches, nonroutine searches at the nation's borders require reasonable

suspicion. *Bradley II*, 299 F.3d at 203; *Beras*, 183 F.3d at 26; *Gonzalez-Rincon*, 36 F.3d at 864. Nonroutine searches consist of strip, body-cavity, and involuntary x-ray searches. *Montoya de Hernandez*, 473 U.S. at 541 n.4. A search requiring one to strip down to his or her underwear has been classified as a strip search. *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 495 (6th Cir. 2008); *Wood v. Hancock Cnty. Sheriff's Dept't*, 354 F.3d 57, 63 n. 10 (1st Cir. 2003) ("[A] strip search may occur even when an inmate is not fully disrobed."). Likewise, a patdown search—while generally a routine search—can be intrusive enough to be considered a nonroutine search. A patdown search where a CBP officer reaches under a person's clothes, "particularly in the breast and crotch area," or the "[f]ondling of a [person's] genital area, breasts, or buttocks area during a patdown" are nonroutine. *Anderson*, 199 F.R.D. at 258; *see Bradley II*, 299 F.3d at 203–04 (acknowledging the possibility that "a patdown gone awry could become so intrusive as to become a nonroutine search requiring application of the reasonable suspicion standard.").

Defendants argue that Plaintiff has not made out a constitutional violation with respect to her detention or the search of her genital area. Defendants contend that this portion of the search was a routine patdown search. Defendants, however, concede that Plaintiff's testimony creates a genuine dispute of fact as to whether the fondling of her breasts and twisting of her nipples by Defendant Robinson is unconstitutional.[2]

Viewing the facts in a light most favorable to Plaintiff, as required of the Court, Plaintiff has established a violation of the Fourth Amendment with respect to the reasonableness of Defendant

---

[2]Defendants have made clear in their motion for partial summary judgment, and accompanying brief, that Defendants Feenstra and Robinson dispute that the search occurred as Plaintiff has testified in her deposition.

Robinson's search.[3] Defendants have dissected the patdown search into two components, claiming that the search of Plaintiff's genital area is somehow distinct from the search of Plaintiff's breasts. Defendants' argument is not supported by any legal authority. Whether the search of Plaintiff was a reasonable and routine search—as Defendants' contend—"depends upon all of the circumstances surrounding the search." *Montoya de Hernandez*, 473 U.S. at 537. The search of Plaintiff, therefore, includes the search of her genital area, along with the search of her breasts. Having conceded that the search of Plaintiff's breasts creates a genuine dispute of fact, Plaintiff has established a constitutional violation under the Fourth Amendment by Defendants' own admission.

At the same time Defendants indirectly concede the merits of their argument, Defendants dispute that the search of Plaintiff's breast area over her camisole was a nonroutine search, citing to *Bradley v. United States ("Bradley I")*, 164 F. Supp. 2d 437, 449 (2001), affirmed by *Bradley II*, 299 F.3d at 197. In *Bradley I*, a CBP officer conducted a "patdown" search over the plaintiff's dress. The trial court stated that the plaintiff's decision to not wear underwear did not change a routine search into an intrusive nonroutine search. *Id.* The trial court went on to state that it would have been reasonable for the CBP officer conducting the search to assume that the plaintiff was wearing underwear. *Id.* Contrary to *Bradley I*, Defendants Robinson and Feenstra were informed by Plaintiff that she was not wearing a bra under her camisole. *Bradley I* therefore does not conclusively show that the search was routine. Thus, whether Plaintiff's decision not to wear a bra under her camisole transformed Defendant Robinson's search into a nonroutine search is a question

---

[3]The Court notes that Plaintiff's testimony indicates that Defendant Robinson conducted the search and Defendant Feenstra merely was present in the cell during the search. While presence alone is not sufficient to create liability under *Bivens*, *Kesterson v. Moritsugu*, 149 F.3d 1183, at *4 (6th Cir. 1998) (table opinion), the parties have not raised this issue in the instant motion and briefs.

of fact for the jury.

Accordingly, a reasonable jury could find that searching Plaintiff after she stripped down to her camisole and yoga pants is consistent with subjecting her to a strip search. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (stating that where the legal question of qualified immunity turns upon a question of fact, the jury must determine liability). If a jury finds that the search qualifies as a strip search, it is a nonroutine search which requires reasonable suspicion. *See Bradley II*, 299 F.3d at 203; *Beras*, 183 F.3d at 26; *Gonzalez-Rincon*, 36 F.3d at 864. Defendants advised Plaintiff that she was being searched prior to being fingerprinted for the officers' safety. Defendants, however, cite to no evidence that either officer had a reasonable suspicion that Plaintiff was carrying any weapon that may have posed a threat to the officers while they fingerprinted Plaintiff. Therefore, a reasonable jury could find that the manner in which Defendant Robinson searched Plaintiff violated her Fourth Amendment right against an unreasonable search and seizure.

Moreover, even assuming that the search of Plaintiff can not be categorized as a strip search, Defendants cite to no legal authority to support their claim that the search conducted on Plaintiff was a routine patdown search as a matter of law. During the search, Defendant Robinson fondled Plaintiff's breasts and twisted her nipples for approximately a minute, resuming after a short pause to fondle her breasts for approximately 30 seconds more, and then forcefully swept her genital area to the extent that she had to remove her underwear from her vagina post-search—all without reasonable suspicion. Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Defendant Robinson violated Plaintiff's Fourth Amendment rights.

2**. Clearly Established Law**

To overcome an assertion of qualified immunity, Plaintiff must also demonstrate that the constitutional right at issue was clearly established at the time of the alleged deprivation. *See, e.g.*, *Saucier*, 533 U.S. at 201. The exact violation need not have been previously declared unlawful by a court, but the relevant legal authority must make it clear to a reasonable officer that the violation at issue is unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "In inquiring whether a constitutional right is clearly established, [the Court] must look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth Circuit], and finally to decisions of other circuits." *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002).

Defendants claim that the detention and search of Plaintiff is not "clearly established" as unlawful, and they, therefore, are entitled to qualified immunity. The Court disagrees. The United States Supreme Court has clearly established that a routine search conducted on a person at the nation's borders requires no level of suspicion and that nonroutine searches included strip, bod-cavity, and involuntary x-ray searches. *See Montoya de Hernandez*, 473 U.S. at 541 n.4. While the Supreme Court declined to decide clearly the level of suspicion generally required for such nonroutine searches, subsequent decisions by a number of federal courts of appeals have made clear that reasonable suspicion is required for a nonroutine search. *Bradley II*, 299 F.3d at 203; *Gonzalez-Rincon*, 36 F.3d at 864 (detaining traveler at border for strip search, x-ray, and monitored bowel movement based on reasonable suspicion of drug smuggling); *United States v. Yakubu*, 936 F.2d 936, 939 (7th Cir. 1991) (same); *Carreon*, 872 F.2d at 1442 (stating that intrusive searches, including a strip search, require a reasonable suspicion); *United States v. Charleus*, 871 F.2d 265, 268 n.2 (2d Cir. 1989) (noting intrusive nonroutine searches require reasonable suspicion); *United*

11

*States v. Oyekan*, 786 F.2d 832, 837–39 (8th Cir. 1986) (detaining traveler at border for x-ray based on reasonable suspicion of drug smuggling).

In light of the legal authority submitted by the parties and reviewed by the Court, a reasonable CBP officer was on notice in March 2010 that fondling Plaintiff's breasts and twisting her nipples for approximately a minute, resuming after a short pause to fondle her breasts for approximately 30 seconds more, and then forcefully sweeping her genital area to the extent that she had to remove her underwear from her genitalia post-search—without reasonable suspicion—violated Plaintiff's Fourth Amendment right. *See Saucier*, 533 U.S. at 202 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."); *Anderson*, 199 F.R.D. at 268 ("Fondling of a traveler's genital area, breasts, or buttocks area during a patdown would also constitute an intrusive patdown."); *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006) ("[M]ore invasive searches, like strip searches, require reasonable suspicion.").

In addition to the relevant legal authority, CBP's handbook that sets forth the policy for personal searches states that a patdown search includes: "[p]atting the hands over the person's clothed body", "[r]emoving the person's shoes", "[l]ifting the pant leg or hem of a skirt a few inches", "[r]emoving a belt", "[e]xamining or reaching into pockets", "[r]olling up shirtsleeves", and "[r]emoving a wig or hairpiece." CBP Personal Search Handbook (July 2004) at 16–17. The handbook further states that "[o]nce a patdown search has been conducted *and reasonable suspicion exists* that material evidence is being concealed" a partial body search may be conducted. *Id.* at 19 (emphasis added). The handbook also provides that a body cavity search "must be based on a reasonable suspicion." *Id.* at 33. As such, CBP's own handbook makes clear to a reasonable officer

12

that the search of Plaintiff was not routine and violated her Fourth Amendment right. Plaintiff has met her burden to show that the alleged violation of her Fourth Amendment right was clearly established at the time of her search. *See Everson v. Lies*, 556 F.3d 484, 494 (6th Cir. 2009). Accordingly, Defendants Robinson and Feenstra are denied summary judgment on the basis of qualified immunity.

### B. CLAIM AGAINST THE UNITED STATES

*Bivens*, however, does not provide for claims against the United States or federal agencies. *Shaner v. United States*, 976 F.2d 990, 994 (6th Cir. 1992); *FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994). Rather, Plaintiff correctly asserts her false imprisonment claim against the United States under the FTCA. Defendants argue that Plaintiff's false imprisonment claim fails because she was lawfully detained and she failed to administratively exhaust that claim.

As to Defendants' first argument, the Court has determined, for the reasons set forth in Section IV.A., *supra*, that whether Plaintiff was lawfully detained and searched is a question of fact for the jury. As to Defendants' second argument, Defendants are correct that Plaintiff is required to present her claim to CBP before filing her lawsuit under the FTCA. *See* 28 U.S.C. § 2675(a) (requiring a plaintiff to "first present[ ] the claim to the appropriate federal agency and [have] his claim . . . finally denied by the agency in writing" before instituting a lawsuit against the United States.). The Fifth Circuit, after reviewing the FTCA's purpose, held that a claim is presented to the appropriate Federal agency "if the Government's investigation of [a plaintiff's] claim should have revealed theories of liability other than those specifically enumerated therein." *Rise v. U.S.*, 630 F.2d 1068, 1071 (5th Cir. 1980); *see also Adams v. United States*, 615 F.2d 284, 288 (5th Cir. 1980). Agreeing with the Fifth Circuit, the Sixth Circuit has held that the FTCA is satisfied "if the claimant

(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Douglas v. United States*, 658 F.2d 445, 447 (6th Cir. 1981).

The Court finds that Plaintiff has met the procedural criteria of the FTCA. Her SF 95 qualifies as written notice to CBP of her claims. The description of her claims contains sufficient detail to enable CBP to investigate her claims. She states that her injury resulted from CBP officers unreasonably searching her. The description of her claim also states that "2 CBP agents detained claimant in a holding cell and informed her entry into U.S. was denied." An investigation of the unreasonable search, based on Plaintiff's SF 95, would have revealed the related theory of unreasonable seizure, *i.e.*, false imprisonment. The SF 95 makes clear that Plaintiff has placed a value of $500,000 on her claim. CBP denied her SF 95 in writing on July 21, 2011. While she filed this case on February 9, 2011, her FTCA claims against the United States were not instituted until August 15, 2011—approximately 25 days after they were denied. Accordingly, Plaintiff's false imprisonment claim under the FTCA survives summary judgment.

## V.  CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that Defendants' motion for partial summary judgment [dkt 36] is DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: July 16, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 16, 2012.

                                          S/Marie E. Verlinde
                                          Case Manager
                                          (810) 984-3290